The next matter is United States of America versus Akeem Gumbs, Mr. Villegas. May it please the Court. Good morning, Your Honors. My name is Gabriel Villegas, and I'm from the Federal Public Defender's Office, appearing on behalf of the appellant, Mr. Akeem Gumbs. I would like to reserve three minutes for rebuttal. That request will be granted. I've raised three issues on appeal for this Court to consider after a jury trial in this matter. The first issue was of great significance because I challenged the government's proof on its attempt to establish interstate commerce. In this case, the government attempted to prove interstate commerce through a camera box. And during the course of the trial, the government continued to build on that camera box by showing it to various witnesses, including a GE expert. And what was significant during the trial was what the government did not present, other than a GE expert testifying that the camera that was contained in that box was not manufactured in the Virgin Islands. The reality is the government did not have the camera. Well, it would have been best if they would have produced the camera. No one can deny that. But is there enough circumstantial evidence from which a jury could reasonably conclude that it wasn't manufactured in the VI? I submit, Judge, that it was not. And what has happened in this case is it's very distinguishable from Rodea, from Gallo, because this court has already looked at how to expand what it means to produce child pornography and what it means to prove interstate commerce as it applies to the production or possession of child pornography. The facts in this case show purely interstate activity. The facts supported the jury's finding that my client produced this video of this activity with this child victim. It was coveted. It was kept within his room on a blue jump drive. It stayed within the US Virgin Islands. And so the ability for the government to expand interstate commerce, to look at materials that were used to produce the child pornography, become that much more important. And there was no testimony or evidence to support that the blue thumb drive itself had traveled to interstate commerce. Or the laptops, the CDs, any other piece of evidence that would have been able to save this child pornography. And it's significant because the materials can also be considered. And so what we have here is all these materials, in particular the blue thumb drive, that would likely the government could have offered testimony that was not manufactured in the US Virgin Islands, focused on a box, a box of a camera that it didn't have. And I think the government had the availability of these other cases to prove its case, to show interstate commerce. And instead it had to build on inferences. And I'm not suggesting that there wasn't other evidence introduced to support the existence of the camera. Because we did see that. We did have a reference by the child victim herself that my client possessed a black camera. We had testimony that my client's mother's boyfriend gave him the camera. He had purchased it at Kmart. We had also had testimony that supported that my client had possessed the black camera. I think it was the child's brother that had testified to that. Again, the box itself had a silver camera on the outside. And I argued to the jury. And they listened. I think the jury looked at that fact. And that the images produced were from a digital camera. That's correct, Judge. Yeah. I believe that. But from all that, couldn't the jury then reasonably conclude that the camera was not manufactured to the eye? They could not, Your Honor. And the reason they couldn't is because, and this is why. Dennis Carter, the government's forensic computer expert, testified that the numbers on these still photos came from this A1250 camera. That would have been the link to the camera box. Because on the camera box it says A1250. But what Dennis Carter was not allowed to testify about was that the videos were created by an A1250 camera. And that was significant because that supported counts one through five. And that was the crux of the production count. And so because of those reasons, Your Honors, I urge you to look closely at what the jury assumed and inferred. Perhaps I missed it in here, but is there evidence in the record that images like that could have been produced from a camera that is produced, manufactured in the Virgin Islands? No, sir. There is not. Additionally, I have raised the issue for Mr. Gumbs in regard to the crying juror. We think that there was a considerable influence on this jury, not only because of the very heightened emotional and highly charged videos that they were subject to review, but also because of how the district court handled the emotionality of one particular juror. And it was clear after the videos were shown that one juror was very emotional. The court noticed it. The court, who typically discourages sidebars, called a sidebar and said, I'm concerned about this juror. My immediate response is simply have the juror removed. It's practical. I was concerned Mr. Gumbs would no longer receive a fair trial at that point because of the bias and prejudice that was exhibited by this juror. I saw it more as a resco expression of a view, and I also saw it as at that point that juror had a stake in the outcome in that view. And I think both parties were reassured that that juror was going to be removed. You never asked to voir dire the juror, though, did you? I did not. And if I remember the briefing, you never filed a brief concerning this issue. That's correct, Your Honor. So, I mean, you didn't push the district judge to verify that there was anything, you know, obviously she was emotionally touched, but it was of such a significance that it would take the verdict. You didn't ask her a voir dire. You didn't file a brief as to the inappropriateness of her continuing. That's correct, Your Honor. So how could we whipsaw the district judge for not doing something when you never asked him to do anything, as I remember from the brief? Well, I think that part of the reasoning behind that, and I think there was a reference, and I did make a suggestion about polling the jury. I don't think it came out as wanting to voir dire the jury. But there wasn't any reason because I believe the district court was going to remove that juror. We had already been reassured at least one occasion that juror was going to be removed. And it wasn't until towards the end of the trial when the court appeared to say, you know, I don't need to remove this juror, that that juror stayed on. And, again, I think the prejudice had already continued and already existed. And for those reasons, we believe that the court erred in simply not finding out, not asking why, not simply conducting an individualized voir dire and find out what is going on with this person and how can we limit the effect on the additional jurors. Now, our review of this question is for abuse of discretion, and it appears from the record that the district court paid particular attention to the actions of the juror after the crime. How under those circumstances can we say that the court abused his discretion? Because the district court didn't remove the juror. I think that is the crux of the abuse of the discretion. The court considered it. It was important. And the court assured us that that was going to happen, and it didn't happen. And I think that is the essence of the abuse of discretion on that particular issue. Additionally, I've raised the issue of the court's failure to grant my motion to suppress. We had a separate suppression hearing. I thought it was significant that there was language in both the warrant and the affidavit that was incorporated into the warrant that allowed the government to what I consider to be unbridled discretion by the agents. And the specific language in that warrant allowed agents to seize images and files in any form and wherever it may be stored and found. Now, in raising that issue, the district court took issue with another aspect of the affidavit and the warrant, and that was the address on my client's driver's license. The court was concerned about the accuracy or maybe the staleness of that particular information but didn't think it was tantamount to any particular Fourth Amendment violation. But what the court didn't address was this specific language and how that language limited agents in what they could seize and where they could seize it. How should the warrant have been circumscribed? What language should have been in there, do you think, to make it not a general warrant? Language that didn't allow in any form or wherever it may be stored and found. That would certainly have been very much more limited. Again, I don't know practically if that would have kept the agents from finding the blue jump drive in Mr. Gumbs' bedroom. But regardless, there certainly needed to have been some limitation in agents' zeal, especially in this kind of case where there may be a belief that this is being sent out, this is being received, there are other victims, et cetera. And we urge the court to limit that, and the court did not do that. Anything else? That's all I have. Okay. We'll have you back on rebuttal. Mr. Potter. May it please the Court, good morning. Edward Potter on behalf of the United States. Why didn't you produce the camera? We did not find the camera. The agents searched for the camera. They did not find the camera. They did find the box that the camera came in. We had a testimony from Mr. Evans who actually purchased the camera, and I think the evidence was that he indicated that that was the actual box that the camera came in. And I don't think that our case would fall apart because we did not have the camera. We had a testimony from the computer forensic person who indicated that based on his analysis of the metadata that the camera that took the image was, in fact, a GE digital camera. And then, of course, the government provided the person from GE who indicated to the court that, in fact, the camera, that specific camera, was, in fact, manufactured in China and that there were no GE manufacturing plants in the Virgin Islands. So coupled with the testimony from Mr. Evans that he purchased the GE camera, the testimony from the agent that the GE camera took the videos, and the testimony from Ms. Weillner that GE does not manufacture any camera, specifically that camera in the Virgin Islands, we thought that that was more than sufficient to establish the interstate nexus for that production of chart pornography count. So we don't believe that the judge committed any error in finding that the jury verdict was, in fact, correct. And, of course, this court gave the trial court a particularly differential standard to determine whether or not the verdict was legally sufficient evidence. Clearly, we believe that the evidence of production of chart pornography and interstate nexus was grounded and legally sufficient evidence. With respect to the emotional juror, this judge was very hands-on in that issue. As a matter of fact, the judge is the one who brought it to the attention of the parties. And just a review of the record shows that we were at sidebar for quite a long time discussing this issue of the emotional juror. Importantly, the judge did indicate that this juror was sniffling. He may have even said that the juror was crying. But that in and of itself was not sufficient to remove this juror, particularly, to be honest, because the evidence, the purpose, the reason why this juror was emotional was based on the evidence that came out at trial. This was not some extraneous issue or something. Well, if you're a defendant, you certainly don't want one of the jurors crying when evidence comes out against you. I mean, it seems to me someone should have wandeered the witness. If I remember correctly, I asked your friend across the aisle why he didn't file a brief, and I think you didn't file a brief either, did you, on the issue? No, Judge, we did not. I mean, it seemed that neither you nor he took it very seriously yourselves. But if I were a criminal defendant, that's the last thing I would want to see. I agree, Judge. Unfortunately, it was based on the evidence. It wasn't based on anything else. And, yes, at times the evidence to prove a defendant's guilt is, in fact, prejudicial to that defendant. But if it was that the defense had pointed to something outside of this hearing that caused the emotional outburst of the juror, or if it was that the juror appeared to be unable to continue to perform her duties as a juror, then maybe the judge would have ruled differently. But the judge did, in fact, let the juror continue to sit coming up to the end of the trial. Well, how could he know whether she could properly sit to the end of the trial without voir direing her? I mean, obviously this woman was very upset. Yes. And no one voir dired her? No one briefed the issue? No, Judge, no one briefed the issue. The judge, again, was paying very close attention to this juror throughout the remainder of the trial. And at the end of the trial, the judge came to the conclusion that, based on his observations of this juror, that she was, in fact, able to. . . How could he say that without voir direing her? Just on appearances? Just on appearances. How could he say that without questioning her? I don't think that. . . Well, of course it would have been. . . It may have been best if the judge did, in fact, question her. But definitely in this case the judge did not. Of course, this court reviews the actions of the trial judge in whether or not to question this juror for manifest abuse of discretion. And given the amount of involvement that this judge had in, number one, raising the issue on its own and continuing to monitor this juror throughout the trial, I think clearly the judge did not abuse his discretion. He looked at the juror and he felt comfortable that this juror, in fact, could continue to deliver. And again, because the evidence that caused the emotional outburst was, in fact, the evidence that came out of the trial, I think that was proper for the court. On the final issue of the warrant and whether or not the court should have suppressed the item that was seized, this was not a general warrant as defense would have. . . The appellate would so indicate. A warrant is general if it unconstitutionally invests the officers who are searching with unbridled discretion for an exploratory rummaging of the defendant's room. That did not occur here. The warrant was very specific. It told the agents who were searching Mr. Gumbs' room that they were limited to search for child pornography. Exhibit C, which was the attachment that indicated what could and could not be seized, even though it was broad, it was also very specific. And I think it was clear from the mention of child pornography throughout almost every paragraph of Exhibit C that it did, in fact, limit what the officers were searching for. And if the officers found something other than the evidence of child pornography, I think it was clear to them that they would have had to have gone back to the magistrate and seek permission to search those additional items that were found. In this case, no additional items were found. All that was found was the evidence of child pornography, and there was no error in this case. That's all I have. Anything else, Mr. Potter? No, thank you. Thank you very much. Mr. Verlagas, do you have anything else to add? I do not, Your Honor. Unless the panel has any other questions for me, I'll waive rebuttal. We thank you. Thank you. Thank both counsel for their well-argued case, and we'll take the matter under advisement.